E. SEAN McLOUGHLIN (Bar No. 176074)
    *smcloughlin@hillfarrer.com*
HILL, FARRER & BURRILL LLP
One California Plaza, 37th Floor
300 South Grand Avenue
Los Angeles, CA 90071-3147
Telephone: (213) 620-0460
Fax: (213) 624-4840
Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DR. ELIZABETH A. HIX | CASE NO. |
|     Plaintiff, | **COMPLAINT FOR DAMAGES FOR:** |
| vs. | **(1) WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY;** |
| MEDICAL MANAGEMENT INTERNATIONAL, INC. d/b/a BANFIELD PET HOSPITAL, | **(2) RETALIATION IN VIOLATION OF CALIFORNIA LABOR CODE § 1102.5;** |
|     Defendant. | **(3) DISCRIMINATION BASED ON DISABILITY IN VIOLATION OF CALIFORNIA GOVERNMENT CODE § 12940(a);** |
| | **(4) BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; AND** |
| | **(5) WAITING TIME PENALTIES PURSUANT TO LABOR CODE §§ 201-203** |
| | **DEMAND FOR JURY TRIAL** |

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

Plaintiff Dr. Elizabeth Hix ("Dr. Hix" or "Plaintiff") alleges as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 on the grounds that there is complete diversity of citizenship between the parties and the amount in controversy in this action exceeds $75,000, exclusive of interests and costs.

2. Plaintiff is informed and believes and thereon alleges that venue over the claims alleged in this Complaint is proper in this Court under 28 U.S.C. § 1391(b) because the County of Los Angeles, State of California is the where the events or omissions giving rise to this action occurred.

## PARTIES

3. Plaintiff is now and at all relevant times has been a citizen of California who resides in the County of Los Angeles, State of California.

4. Defendant Medical Management International, Inc. d/b/a Banfield Pet Hospital ("Banfield") is now and at all relevant times has been a Delaware corporation with its principal place of business in Vancouver, State of Washington.

## FACTS COMMON TO ALL CAUSES OF ACTION

1. In 2009, Dr. Hix began her employment at Banfield as an associate doctor at the Signal Hill, California location. Within one year she became lead doctor. By 2011, Dr. Hix was promoted to Chief of Staff.

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

COMPLAINT

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

2.     Dr. Hix's exemplary performance resulted in added responsibilities.  Banfield tasked her with opening and managing a second location in El Segundo, California.  Within a few years, El Segundo was the top ranked Banfield hospital in the entire country, despite multiple changes in practice management staff.

3.     In April 2017, Dr. Hix was promoted to Medical Director of the Los Angeles market.  The market was ranked in the bottom third nationally when she took over.  By December the market was in the top 50%, and within one year it ranked in the top 10% of the country.  Things only continued to get better under her leadership.  In 2019, Dr. Hix took her Los Angeles market to number one in the Southwest region.  As with her El Segundo hospital, Dr. Hix did all this despite changes in field director partners.  For her repeated years of stellar performance, Banfield awarded Dr. Hix the 2019 Director of Veterinary Quality of the Year.

4.     The extraordinary performance did not stop there.  In January 2021 (the same year a new line manager, Dr. Holly McCown, would later unlawfully terminate Dr. Hix), Banfield again expanded Dr. Hix's responsibilities to include the Los Angeles-Central market.  This new market was ranked second lowest in the country and Dr. Hix took it on, in addition to her Los Angeles market, without the assistance of a field director partner.  To add to the workload, Dr. Hix was also training a brand-new field leader in her Los Angeles market.  Once again, Dr. Hix delivered.  Her Los Angeles market remained the top in the Southwest and her new LA-Central market was on track to rank in the top half of the country.

5.     Year after year, Dr. Hix consistently exceeded performance metrics and received the performance rating of "Exceeds Expectations"

- 3 -

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

four of five years in a row – the only "Meets Expectations" she received was the year she was promoted into a brand-new leadership role in a struggling market.

6.     Dr. Hix was successful because she was not afraid to think outside the box and implement her own ideas.  She had a reputation for speaking her mind and raising concerns about Banfield's decisions.  This was a widely valued perspective by peers and managers alike, until her new manager, Dr. Holly McCown, took over.

7.     Dr. McCown became Dr. Hix's line manager in early 2021. During the first few months McCown was in the role, three important issues were being raised by Dr. Hix: (a) Banfield's ongoing violation of Centers for Disease Control and Prevention ("CDC") and American Veterinary Medical Association ("AVMA") guidelines to prioritize urgent and emergency cases over preventive care and elective procedures; (b) requiring unsafe travel in violation of COVID-19 orders; and (c) the negative impact on patient care caused by a new performance metric called the "Veterinary Quality" score.

8.     Shortly after the COVID-19 pandemic began, and with "stay at home" orders in place, Banfield required hospitals to contact clients and urge them to make appointments for comprehensive exams and elective procedures for healthy pets.  The directive was tracked by a newly measured performance metric.  Failure to meet the target negatively impacted performance ratings.  The effect of Banfield's preventive-focused directive was to fill appointment slots with healthy pets and deny medical treatment for sick or complicated pets.  Banfield acknowledged on a leadership call that sick pets could not get appointments but claimed they "owed it" to Wellness Plan clients.  As leaders are evaluated, and compensated, by their performance on such

- 4 -

metrics, everyone was pressured to meet the metric or face losing their job.

9.     Banfield's decision was in direct violation of then-existing CDC guidelines and AVMA directives, adopted by various State veterinary medical boards, that veterinary hospitals prioritize urgent and emergency cases and postpone preventive care and elective procedures for healthy pets.  Dr. Hix was concerned about this unlawful and unethical practice and reported it to Dr. Novara (her then-current line manager), Dr. McCown, and other superiors.  Her concerns were ignored, as Banfield was admittedly content to turn away sick pets to make room for healthy pets and the consistent revenue stream they provided.

10.    Dr. Hix was far from the only doctor who complained to Banfield about denying care to sick pets during the pandemic.  Social media posts were appearing on Facebook and Instagram about Banfield not allowing doctors to meet their oath of caring for sick pets.  Doctors began to resign, concerned about the environment at Banfield.  The issue grew to the point Banfield had to address it during a national leadership call.  Senior leaders acknowledged that Banfield was not following AVMA directives but claimed they were actively lobbying for changes.  Banfield nevertheless required hospitals to prioritize healthy Wellness Plan clients even if it meant turning away sick patients and violating CDC and AVMA guidelines.

11.    As the pandemic shifted, Banfield continued to pressure field leaders to prioritize the revenue stream at the expense of its legal and ethical duties.  During a time when travel remained restricted in Los Angeles County, Dr. McCown directed Dr. Hix to travel to each of her 30 hospitals within a one-month period.  This would mean traveling to

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

COMPLAINT

multiple hospitals and interacting with multiple teams per day, further increasing the public health risk by jeopardizing workplace safety and violating travel restrictions. When Dr. Hix reminded her that travel was restricted in Los Angeles County, Dr. McCown first ignored her, then claimed there was a misunderstanding about the travel request, and finally, threatened disciplinary action if she refused.

12. Dr. McCown's decision to ignore complaints of unethical conditions effected not only her direct reports, but patient care as well. In 2021, Banfield revised its Veterinary Quality ("VQ") score. The VQ score graded hospitals based on, among other things, the percentage of dental extractions performed using radiographs. As this metric was tied to year-end variable pay, hospital and field managers had a financial incentive to meet the targets. For years Dr. Hix was a vocal advocate for the use of dental radiographs with tooth extractions. She was a firm believer in providing this to clients and offered both written and verbal training on how to start to prepare staff and clients for this even before her markets had access to the equipment. However, when the requirement was rolled out during the pandemic, Dr. Hix expressed concerns to Dr. McCown and others that the new requirement was resulting in the denial of needed dental care to patients. Dental radiographs require substantial time and training to master, and many locations were not able to receive the proper training due to pandemic restrictions. Dr. Hix explained to Dr. McCown and others that many of the teams had neither the proper staffing, nor the necessary training on the new equipment, to complete the radiographs properly.

13. Dr. Hix raised the concern that while performing an extraction without a radiograph may not be gold standard, it is well within the Standard of Care. Before the VQ score was implemented,

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

doctors could use their professional judgement to offer clients the option to proceed with the needed extraction without radiographs. Sometimes this was needed because the client could not afford to do both, but the pet could still benefit from the extraction alone. Sometimes it was offered because that particular Banfield hospital did not yet have the radiograph equipment. However, after the VQ score was implemented, hospitals were not to offer the option to perform an extraction without radiographs. Furthermore, leaders were to start holding doctors accountable for not following this directive. In order to not charge clients for a service they were not competent to perform, doctors began choosing to postpone the needed extractions for some mythical date in the future. Dr. Hix reported she was seeing a significant drop in extractions being performed and expressed concern pets were being denied needed care in order for hospitals to not be disciplined for not meeting this arbitrary target. She repeatedly requested, but never received, reports to show the comparison of care provided prior to this new requirement.

14. The situation escalated further in the summer of 2021. Dr. Hix disclosed a personal medical concern to Dr. McCown and asked for support. Rather than provide the required associate resources — accommodation, leave, association support line, etc. — Dr. McCown told Dr. Hix she just needed to "trust her" and discouraged Dr. Hix from taking a leave of absence or seeking additional resources. Upon being asked to trust Dr. McCown instead of following the appropriate path, Dr. Hix expressed her concerns directly to Dr. McCown. She advised Dr. McCown she did not evoke trust and was not acting as a leader, particularly given McCown's failure to address Dr. Hix's or her colleagues' reports of Banfield's unethical and illegal conduct.

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

15.    In November of 2021, Dr. Hix had yet another conversation with Dr. McCown about the unlawful and unethical conditions at Banfield.  Again, Dr. Hix raised her concerns about (a) Banfield's practice of denying treatment to sick pets during the pandemic to accommodate appointments for healthy pets; (b) requiring extensive and unsafe travel during the pandemic; and (c) the denial of needed medical care due to the impact of the VQ metric.  At the end of the conversation Dr. McCown told Dr. Hix she would receive the rating of "Below Expectations."  Dr. McCown admitted she knew Dr Hix "would be shocked and angry about it."  Dr. Hix followed up with questions about how this rating came to be and how was it possible she had not been made aware of any issues prior to that moment.  Banfield has a process to report low ratings; managers are not permitted to deliver low performance ratings to employees based on issues the manager has not previously disclosed.  Further, Banfield requires a midyear "Off-Track Form" to be completed if a low rating is anticipated.  Dr. Hix received no prior warning and no such form.  It was clear, Dr. McCown was ignoring Banfield's policies and rushing to punish Dr. Hix for repeatedly raising multiple concerns about Banfield's practices.  Dr. Hix reported the retaliation to Skyla Kiel in the human resources department.

16.    Dr. McCown's ongoing mistreatment of Dr. Hix and her unwillingness to address Banfield's unlawful and unethical actions created an untenable and stressful environment.  Dr. Hix concluded she would fulfill her prior commitment to attend the FETCH conference, then initiate a leave of absence.  However, during the week of the conference her personal situation pushed her past her limit.  She and her family were anxiously awaiting news on both her sister's and

cousin's cancer scans (both have been diagnosed) and her father was diagnosed with stage four kidney disease.

17.    On December 2, 2021, the first day of the conference, a colleague invited Dr. Hix to attend a social event at Catrina's Cantina, hosted by Dr. Molly McAllister, Banfield's Chief Medical Officer. Banfield had decided not to host a formal work event at the conference, so Dr. McCallister personally invited doctors to attend an after-hours, social gathering where she provided snacks and alcohol.  A local photographer offered to take pictures of the group and Dr. McCallister described herself as "the sucker who buys these types of things."  She told Dr. Hix and others that she would purchase the photographs with her own credit card as this would not be considered a work expense. Multiple photographs were taken at the end of the night, including moments of levity in which the group was goofing off.  In one of the many pictures taken that night, Dr. Hix is faintly shown displaying her middle finger.  Dr. McAllister chose to publish that particular picture on her personal Instagram page without Dr. Hix's knowledge or consent. The picture has since been deleted, but not before Brian Garish, Banfield's Chief Executive Officer, "liked" the post and commented with congratulatory emojis.  That photograph later became Banfield's pretextual reason for terminating Dr. Hix.

18.    The following morning, December 3, 2021, Dr. Hix initiated a leave of absence and returned home.  Over the weekend, she emailed Dr. McCown to make her aware of the decision.

19.    Three days later, on December 6, 2021, Dr. McCown terminated Dr. Hix's employment without warning or explanation.  Dr. McCown delivered the shocking news by email to the personal email address Dr. Hix had used to notify Dr. McCown she had initiated a

COMPLAINT

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

medical leave of absence. Dr. McCown provided no details or explanation for the decision. She simply wrote that Dr. Hix was terminated for "gross misconduct." Because no explanation was provided, Dr. Hix had to schedule a telephone call with someone from human resources, who informed her the termination was based on what was depicted in Dr. McAllister's Instagram post.

20. The decision to terminate Dr, Hix was clearly pretextual. Dr. Hix had no history of discipline, Banfield conducted no investigation into the circumstances and events giving rise to the picture Dr. McAllister posted, and Banfield rushed to terminate her without following its own policies and procedures that ordinarily precede a decision to terminate employment.

21. Banfield's decision to terminate Dr. Hix was also wildly disproportionate to the conduct at issue, further confirming that it was pretextual. As a high-ranking Banfield manager, Dr. Hix is aware of many incidents of actual "gross misconduct" that did not result in termination.

22. It is apparent Banfield was looking for a reason to terminate a whistleblower. But Banfield was also trying to save money. Dr. Hix was on track to receive a substantial bonus. Banfield did not pay Dr. Hix her bonus presumably having declared a forfeiture based on her employment ending before the end of the calendar year. Had Banfield followed its own practice of suspension and investigation, Dr. Hix would have been employed and on her leave of absence through the end of the year. Banfield expedited, and retroactively dated, the termination for the sole purpose of unlawfully declaring a forfeiture of Dr. Hix's bonus.

23. Dr. Hix is a leader with an impeccable record. She had no history of disciplinary action, was decorated with awards, and was a top

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

performer.  When Dr. Hix began raising concerns about Banfield's unethical and unlawful actions during the pandemic, her line manager first ignored her, then threatened disciplinary action, and when that failed, she made up a reason to terminate her.  This was not a lawful termination, but retaliation against a whistle blower on a protected leave of absence.

## FIRST CLAIM FOR RELIEF

### (For Wrongful Termination In Violation Of Public Policy)

24.    Plaintiff incorporates each of the foregoing paragraphs above as though fully set forth in this cause of action.

25.    Banfield wrongfully terminated Dr. Hix in violation of various fundamental public policies of the United States and the State of California.  These fundamental public policies are embodied in, *inter alia*, the following federal and California statutes, codes, and regulations:  (1) statutes governing the accurate and timely payment of wages and public policy against declaring a forfeiture of earned bonus compensation (*Cal. Lab. Code* §§ 200-210, 221); (2) statutes mandating a safe and healthful workplace (*Cal. Lab. Code* §§ 6400 *et seq.*; 29 C.F.R. § 1960.46); (3) statutes prohibiting unfair business practices (*Cal. Bus. & Prof. Code* §§ 17200 *et seq.*); (4) statutes prohibiting the interference with employee family and medical leave rights (*Cal. Gov. Code* § 12945.2); (5) statutes prohibiting disability discrimination (*Cal. Gov. Code* § 12940); and (6) other federal and California statutes, regulations, and codes.

26.    Banfield's acts and omissions caused Dr. Hix to suffer actual damages including, but not limited to, lost wages, attorneys' fees, costs of suit, and other pecuniary losses not presently ascertainable.  Also,

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

Banfield's acts and omissions caused Dr. Hix to suffer humiliation, anxiety, shock, embarrassment, discomfort, emotional distress, worry, and related symptoms, all to her special and general damage according to proof at the time of trial.

27.     Banfield, through its managing agents and officers, did the things alleged intentionally, oppressively, and maliciously with an evil and malevolent motive to injure Dr. Hix.  These acts, which resulted in Dr. Hix's wrongful termination against public policy, were obnoxious, despicable, and ought not be suffered by any member of the community. Therefore, Dr. Hix is entitled to punitive or exemplary damages against Banfield in an amount to be determined at the time of trial.

## SECOND CLAIM FOR RELIEF

## (For Retaliation In Violation Of Cal. Labor Code § 1102.5)

28.     Plaintiff incorporates each of the foregoing paragraphs above as though fully set forth in this cause of action.

29.     In violation of California *Labor Code* section 1102.5, Banfield retaliated against Dr. Hix for reporting what she reasonably believed to constitute violations of federal and California laws, rules, and regulations to persons with authority over Dr. Hix, and who had the authority to investigate, discover, and correct the violations.  The reported activities would result in a violation of at least the following statutes, rules, and regulations:

a.     Statutes mandating a safe and healthful workplace, and related COVID-19 restrictions (*Cal. Lab. Code* §§ 6400 et seq.; 7 C.C.R. § 3205, *et seq.*; 29 C.F.R. § 1960.46; Cal. Exec. Orders N-33-20, N-60-20; Cal. Dept. Pub. Health Orders issued pursuant to Health & Saf. Code §§ 120125, 120130(c), 120135, 120140, 120145,

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

- 12 -

120175, 120195, 31080; L.A. County Dept. Pub. Health Orders);

b.     Statutes prohibiting unfair business practices (*Cal. Bus. & Prof. Code* §§ 17200 et seq.)

c.     CDC and AVMA COVID-19 guidelines as adopted by State Veterinary Medicine boards.

d.     The California Veterinary Medicine Practice Act (*Cal. Bus. & Prof. Code*, Div. 2, Ch. 11; Cal. Code of Reg., Tit. 16, Div. 20.)

e.     Statutes prohibiting interference with employee family or medical leave (*Cal. Gov. Code* § 12945.2)

30.     Banfield's acts and omissions caused Dr. Hix to suffer actual damages including, but not limited to, lost wages, attorneys' fees, costs of suit, and other pecuniary losses not presently ascertainable.  Also, Banfield's acts and omissions caused Dr. Hix to suffer humiliation, anxiety, shock, embarrassment, discomfort, emotional distress, worry, and related symptoms, all to her special and general damage according to proof at the time of trial.

31.     Banfield, through its managing agents and officers, did the things alleged intentionally, oppressively, and maliciously with an evil and malevolent motive to injure Dr. Hix.  These acts, which resulted in Dr. Hix's wrongful termination against public policy, were obnoxious, despicable, and ought not be suffered by any member of the community. Therefore, Dr. Hix is entitled to punitive or exemplary damages against Banfield in an amount to be determined at the time of trial.

32.     Banfield's conduct justifies the imposition of civil penalties, pursuant to California Labor Code section 1102.5(f).

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

COMPLAINT

**THIRD CLAIM FOR RELIEF**

**(For Interfence With The Exercise Of Rights Pursuant To The California Family Rights Act (Gov. Code § 12945.2)**

33.    Plaintiff incorporates each of the foregoing paragraphs above as though fully set forth in this cause of action.

34.    Banfield is an employer covered by the California Family Rights Act.

35.    Dr. Hix was eligible to take CFRA leave.

36.    Banfield interfered with Dr. Hix's right to take a leave of absence when Dr. Hix's supervisor discouraged Dr. Hix from taking a leave after reporting a medical condition.  Later, Banfield terminated Dr. Hix for exercising her right to take a leave of absence.

37.    Banfield's acts and omissions caused Dr. Hix to suffer actual damages including, but not limited to, lost wages, attorneys' fees, costs of suit, and other pecuniary losses not presently ascertainable.  Also, Banfield's acts and omissions caused Dr. Hix to suffer humiliation, anxiety, shock, embarrassment, discomfort, emotional distress, worry, and related symptoms, all to her special and general damage according to proof at the time of trial.

38.    Banfield, through its managing agents and officers, did the things alleged intentionally, oppressively, and maliciously with an evil and malevolent motive to injure Dr. Hix.  These acts, which resulted in Dr. Hix's wrongful termination against public policy, were obnoxious, despicable, and ought not be suffered by any member of the community.  Therefore, Dr. Hix is entitled to punitive or exemplary damages against Banfield in an amount to be determined at the time of trial.

39.    Dr. Hix has fully exhausted her administrative remedies.  On June 27, 2022, Dr. Hix filed a complaint with the California Department

- 14 -

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

of Fair Employment & Housing alleging that Banfield interfered with her right to take a leave of absence.  The same day, the DFEH issued Dr. Hix a "Right to Sue Notice."  Copies of Dr. Hix's DFEH complaint and Right to Sue letter are collectively attached as Exhibit 1.

<div style="text-align:center">

**FOURTH CLAIM FOR RELIEF**
**(For Breach Of The Implied Covenant Of**
**Good Faith And Fair Dealing)**

</div>

40.    Plaintiff incorporates each of the foregoing paragraphs above as though fully set forth in this cause of action.

41.    Every contract imposes upon each party to that agreement a duty of good faith and fair dealing in its performance and its enforcement.  There is implied in every contract a covenant by each party not to do anything that will deprive any other party to the contract of its benefits.  The covenant not only imposes upon each contracting party the duty to refrain from doing anything that would render performance of the contract impossible, but also the duty to do everything that the contract presupposes that party will do to accomplish the contract's purpose(s).

42.    Banfield and Dr. Hix entered into a variable pay agreement in which Banfield agreed to pay Dr. Hix an annual bonus ("Bonus Agreement").  A condition precedent to Dr. Hix receiving her bonus was being employed by Banfiled through the end of the calendar year.  Dr. Hix received bonus compensation pursuant to the Bonus Agreement on numerous occasions during her employment.

43.    Banfield breached the implied covenant of good faith and fair dealing contained in the Bonus Agreement by prematurely terminating

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

Dr. Hix's employment just days before the end of the year as a pretext to cheat her out of the bonus she had earned.

44.    As a result of Banfield's breach Dr. Hix suffered damages in an amount to be determined at trial.

## FIFTH CLAIM FOR RELIEF
### (For Waiting Time Penalties Pursuant To
### California Labor Code §§ 201-203)

45.    Plaintiff incorporates each of the foregoing paragraphs above as though fully set forth in this cause of action.

46.    Plaintiff is informed and believes that Banfiled willfully failed to pay her all wages due and owing within 72 hours of her termination in violation of California *Labor Code* sections 201 and 202.

47.    As a result, Banfield is required to pay Plaintiff a waiting time penalty pursuant to California *Labor Code* section 203.

WHERFORE, Plaintiff requests entry of their judgment against Defendant as follows:

On the First Claim For Relief

1.    For compensatory damages in excess of $750,000 according to proof.

2.    For punitive and exemplary damages sufficient to punish Defendant and to discourage Defendant from acting in a similar manner in the future.

4.    For reasonable attorneys' fees.

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

COMPLAINT

**HILL, FARRER & BURRILL LLP**
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

<u>On the Second Claim For Relief</u>

5.    For compensatory damages in excess of $750,000 according to proof.

6.    For punitive and exemplary damages sufficient to punish Defendant and to discourage Defendant from acting in a similar manner in the future.

7.    For reasonable attorneys' fees;

8.    For civil penalties, pursuant to California *Labor Code* section 1102.5(f).

<u>On the Third Claim For Relief</u>

9.    For compensatory damages in excess of $750,000 according to proof.

10.    For punitive and exemplary damages sufficient to punish Defendant and to discourage Defendant from acting in a similar manner in the future.

11.    For reasonable attorneys' fees.

<u>On the Fourth Claim For Relief</u>

12.    For compensatory damages in excess of $750,000 according to proof.

<u>On the Fifth Claim For Relief</u>

13.    For waiting time penalties, pursuant to California *Labor Code* section 203.

14.    For reasonable attorneys' fees.

COMPLAINT

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

<u>On All Claims For Relief</u>

13.   For Plaintiff's costs incurred in this action.

14.   For prejudgment interest.

15.   For such other and further relief as the Court may deem reasonable under the circumstances.


DATED:     June 28, 2022                    HILL, FARRER & BURRILL LLP


By: /s/ *Sean McLoughlin*
E. Sean McLoughlin
Attorneys for Plaintiff
Dr. Elizabeth Hix

- 18 -

COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**HILL, FARRER & BURRILL LLP**
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

## DEMAND FOR JURY TRIAL

Plaintiff Dr. Elizabeth Hix hereby demands a trial by jury on all causes of action and issues that may be tried by a jury in the above-captioned action.

DATED: June 28, 2022                    HILL, FARRER & BURRILL LLP

By: /s/ *Sean McLoughlin*
E. Sean McLoughlin
Attorneys for Plaintiff
Dr. Elizabeth Hix

- 19 -

COMPLAINT

# EXHIBIT 1

**COMPLAINT OF EMPLOYMENT DISCRIMINATION
BEFORE THE STATE OF CALIFORNIA
DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING
Under the California Fair Employment and Housing Act
(Gov. Code, § 12900 et seq.)**

**In the Matter of the Complaint of**
Elizabeth Hix                                          DFEH No. 202206-17373422

Complainant,

vs.

Medical Management International, Inc. d/b/a Banfield
Pet Hospital
,

Respondents

---

**1.** Respondent **Medical Management International, Inc. d/b/a Banfield Pet Hospital** is an **employer** subject to suit under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).

**2.** Complainant **Elizabeth Hix**, resides in the City of **Hermosa Beach,** State of **California.**

**3.** Complainant alleges that on or about **December 6, 2021**, respondent took the following adverse actions:

**Complainant was discriminated against** because of complainant's family care or medical leave (cfra) and as a result of the discrimination was terminated, reprimanded.

**Complainant experienced retaliation** because complainant requested or used family care or medical leave (cfra) and as a result was terminated, reprimanded.

**Additional Complaint Details:** See Attachment 1.

-1-
*Complaint – DFEH No. 202206-17373422*

Date Filed: June 27, 2022

Form DFEH-ENF 80 RS (Revised 02/22)

VERIFICATION

I, **DR. ELIZABETH A. HIX**, am the **Complainant** in the above-entitled complaint.  I have read the foregoing complaint and know the contents thereof.  The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe it to be true.

On June 27, 2022, I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

**LOS ANGELES, CA**

-2-
*Complaint – DFEH No. 202206-17373422*

Date Filed: June 27, 2022

Form DFEH-ENF 80 RS (Revised 02/22)

## **ATTACHMENT 1**

In 2009, Dr. Hix began her employment at Banfield as an associate doctor at the Signal Hill, California location.  Within one year she became lead doctor.  By 2011, Dr. Hix was promoted to Chief of Staff.

Dr. Hix's exemplary performance resulted in added responsibilities.  Banfield tasked her with opening and managing a second location in El Segundo, California.  Within a few years, El Segundo was the top ranked Banfield hospital in the entire country, despite multiple changes in practice management staff.

In April 2017, Dr. Hix was promoted to Medical Director of the Los Angeles market.  The market was ranked in the bottom third nationally when she took over.  By December the market was in the top 50%, and within one year it ranked in the top 10% of the country.  Things only continued to get better under her leadership.  In 2019, Dr. Hix took her Los Angeles market to number one in the Southwest region.  As with her El Segundo hospital, Dr. Hix did all this despite changes in field director partners.  For her repeated years of stellar performance, Banfield awarded Dr. Hix the 2019 Director of Veterinary Quality of the Year.

The extraordinary performance did not stop there.  In January 2021 (the same year a new line manager, Dr. Holly McCown, would later unlawfully terminate Dr. Hix), Banfield again expanded Dr. Hix's responsibilities to include the Los Angeles-Central market.  This new market was ranked second lowest in the country and Dr. Hix took it on,

in addition to her Los Angeles market, without the assistance of a field director partner. To add to the workload, Dr. Hix was also training a brand-new field leader in her Los Angeles market. Once again, Dr. Hix delivered. Her Los Angeles market remained the top in the Southwest and her new LA-Central market was on track to rank in the top half of the country.

Year after year, Dr. Hix consistently exceeded performance metrics and received the performance rating of "Exceeds Expectations" four of five years in a row – the only "Meets Expectations" she received was the year she was promoted into a brand-new leadership role in a struggling market.

Dr. Hix was successful because she was not afraid to think outside the box and implement her own ideas. She had a reputation for speaking her mind and raising concerns about Banfield's decisions. This was a widely valued perspective by peers and managers alike, until her new manager, Dr. Holly McCown, took over.

Dr. McCown became Dr. Hix's line manager in early 2021. During the first few months McCown was in the role, three important issues were being raised by Dr. Hix: (a) Banfield's ongoing violation of Centers for Disease Control and Prevention ("CDC") and American Veterinary Medical Association ("AVMA") guidelines to prioritize urgent and emergency cases over preventive care and elective procedures; (b) requiring unsafe travel in violation of COVID-19 orders; and (c) the negative impact on patient care caused by a new performance metric called the "Veterinary Quality" score.

Shortly after the COVID-19 pandemic began, and with "stay at home" orders in place, Banfield required hospitals to contact clients and urge them to make appointments for comprehensive exams and elective procedures for healthy pets. The directive was tracked by a newly measured performance metric. Failure to meet the target negatively impacted performance ratings. The effect of Banfield's preventive-focused directive was to fill appointment slots with healthy pets and deny medical treatment for sick or complicated pets. Banfield acknowledged on a leadership call that sick pets could not get appointments but claimed they "owed it" to Wellness Plan clients. As leaders are evaluated, and compensated, by their performance on such metrics, everyone was pressured to meet the metric or face losing their job.

Banfield's decision was in direct violation of then-existing CDC guidelines and AVMA directives, adopted by various State veterinary medical boards, that veterinary hospitals prioritize urgent and emergency cases and postpone preventive care and elective procedures for healthy pets. Dr. Hix was concerned about this unlawful and unethical practice and reported it to Dr. Novara (her then-current line manager), Dr. McCown, and other superiors. Her concerns were ignored, as Banfield was admittedly content to turn away sick pets to make room for healthy pets and the consistent revenue stream they provided.

Dr. Hix was far from the only doctor who complained to Banfield about denying care to sick pets during the pandemic. Social media posts were appearing on Facebook and Instagram about Banfield not

allowing doctors to meet their oath of caring for sick pets. Doctors began to resign, concerned about the environment at Banfield. The issue grew to the point Banfield had to address it during a national leadership call. Senior leaders acknowledged that Banfield was not following AVMA directives but claimed they were actively lobbying for changes. Banfield nevertheless required hospitals to prioritize healthy Wellness Plan clients even if it meant turning away sick patients and violating CDC and AVMA guidelines.

As the pandemic shifted, Banfield continued to pressure field leaders to prioritize the revenue stream at the expense of its legal and ethical duties. During a time when travel remained restricted in Los Angeles County, Dr. McCown directed Dr. Hix to travel to each of her 30 hospitals within a one-month period. This would mean traveling to multiple hospitals and interacting with multiple teams per day, further increasing the public health risk by jeopardizing workplace safety and violating travel restrictions. When Dr. Hix reminded her that travel was restricted in Los Angeles County, Dr. McCown first ignored her, then claimed there was a misunderstanding about the travel request, and finally, threatened disciplinary action if she refused.

Dr. McCown's decision to ignore complaints of unethical conditions effected not only her direct reports, but patient care as well. In 2021, Banfield revised its Veterinary Quality ("VQ") score. The VQ score graded hospitals based on, among other things, the percentage of dental extractions performed using radiographs. As this metric was tied to year-end variable pay, hospital and field managers had a financial incentive to meet the targets. For years Dr. Hix was a vocal

advocate for the use of dental radiographs with tooth extractions. She was a firm believer in providing this to clients and offered both written and verbal training on how to start to prepare staff and clients for this even before her markets had access to the equipment. However, when the requirement was rolled out during the pandemic, Dr. Hix expressed concerns to Dr. McCown and others that the new requirement was resulting in the denial of needed dental care to patients. Dental radiographs require substantial time and training to master, and many locations were not able to receive the proper training due to pandemic restrictions. Dr. Hix explained to Dr. McCown and others that many of the teams had neither the proper staffing, nor the necessary training on the new equipment, to complete the radiographs properly.

Dr. Hix raised the concern that while performing an extraction without a radiograph may not be gold standard, it is well within the Standard of Care. Before the VQ score was implemented, doctors could use their professional judgement to offer clients the option to proceed with the needed extraction without radiographs. Sometimes this was needed because the client could not afford to do both, but the pet could still benefit from the extraction alone. Sometimes it was offered because that particular Banfield hospital did not yet have the radiograph equipment. However, after the VQ score was implemented, hospitals were not to offer the option to perform an extraction without radiographs. Furthermore, leaders were to start holding doctors accountable for not following this directive. In order to not charge clients for a service they were not competent to perform, doctors began choosing to postpone the needed extractions for some mythical date in

the future. Dr. Hix reported she was seeing a significant drop in extractions being performed and expressed concern pets were being denied needed care in order for hospitals to not be disciplined for not meeting this arbitrary target. She repeatedly requested, but never received, reports to show the comparison of care provided prior to this new requirement.

The situation escalated further in the summer of 2021. Dr. Hix disclosed a personal medical concern to Dr. McCown and asked for support. Rather than provide the required associate resources — accommodation, leave, association support line, etc. — Dr. McCown told Dr. Hix she just needed to "trust her" and discouraged Dr. Hix from taking a leave of absence or seeking additional resources. Upon being asked to trust Dr. McCown instead of following the appropriate path, Dr. Hix expressed her concerns directly to Dr. McCown. She advised Dr. McCown she did not evoke trust and was not acting as a leader, particularly given McCown's failure to address Dr. Hix's or her colleagues' reports of Banfield's unethical and illegal conduct.

In November of 2021, Dr. Hix had yet another conversation with Dr. McCown about the unlawful and unethical conditions at Banfield. Again, Dr. Hix raised her concerns about (a) Banfield's practice of denying treatment to sick pets during the pandemic to accommodate appointments for healthy pets; (b) requiring extensive and unsafe travel during the pandemic; and (c) the denial of needed medical care due to the impact of the VQ metric. At the end of the conversation Dr. McCown told Dr. Hix she would receive the rating of "Below Expectations." Dr. McCown admitted she knew Dr Hix "would be

shocked and angry about it." Dr. Hix followed up with questions about how this rating came to be and how was it possible she had not been made aware of any issues prior to that moment. Banfield has a process to report low ratings; managers are not permitted to deliver low performance ratings to employees based on issues the manager has not previously disclosed. Further, Banfield requires a midyear "Off-Track Form" to be completed if a low rating is anticipated. Dr. Hix received no prior warning and no such form. It was clear, Dr. McCown was ignoring Banfield's policies and rushing to punish Dr. Hix for repeatedly raising multiple concerns about Banfield's practices. Dr. Hix reported the retaliation to Skyla Kiel in the human resources department.

Dr. McCown's ongoing mistreatment of Dr. Hix and her unwillingness to address Banfield's unlawful and unethical actions created an untenable and stressful environment. Dr. Hix concluded she would fulfill her prior commitment to attend the FETCH conference, then initiate a leave of absence. However, during the week of the conference her personal situation pushed her past her limit. She and her family were anxiously awaiting news on both her sister's and cousin's cancer scans (both have been diagnosed) and her father was diagnosed with stage four kidney disease.

On December 2, 2021, the first day of the conference, a colleague invited Dr. Hix to attend a social event at Catrina's Cantina, hosted by Dr. Molly McAllister, Banfield's Chief Medical Officer. Banfield had decided not to host a formal work event at the conference, so Dr. McCallister personally invited doctors to attend an after-hours, social gathering where she provided snacks and alcohol. A local photographer

offered to take pictures of the group and Dr. McCallister described herself as "the sucker who buys these types of things." She told Dr. Hix and others that she would purchase the photographs with her own credit card as this would not be considered a work expense. Multiple photographs were taken at the end of the night, including moments of levity in which the group was goofing off. In one of the many pictures taken that night, Dr. Hix is faintly shown displaying her middle finger. Dr. McAllister chose to publish that particular picture on her personal Instagram page without Dr. Hix's knowledge or consent. The picture has since been deleted, but not before Brian Garish, Banfield's Chief Executive Officer, "liked" the post and commented with congratulatory emojis. That photograph later became Banfield's pretextual reason for terminating Dr. Hix.

The following morning, December 3, 2021, Dr. Hix initiated a leave of absence and returned home. Over the weekend, she emailed Dr. McCown to make her aware of the decision.

Three days later, on December 6, 2021, Dr. McCown terminated Dr. Hix's employment without warning or explanation. Dr. McCown delivered the shocking news by email to the personal email address Dr. Hix had used to notify Dr. McCown she had initiated a medical leave of absence. Dr. McCown provided no details or explanation for the decision. She simply wrote that Dr. Hix was terminated for "gross misconduct." Because no explanation was provided, Dr. Hix had to schedule a telephone call with someone from human resources, who informed her the termination was based on what was depicted in Dr. McAllister's Instagram post.

The decision to terminate Dr, Hix was clearly pretextual.  Dr. Hix had no history of discipline, Banfield conducted no investigation into the circumstances and events giving rise to the picture Dr. McAllister posted, and Banfield rushed to terminate her without following its own policies and procedures that ordinarily precede a decision to terminate employment.

Banfield's decision to terminate Dr. Hix was also wildly disproportionate to the conduct at issue, further confirming that it was pretextual.  As a high-ranking Banfield manager, Dr. Hix is aware of many incidents of actual "gross misconduct" that did not result in termination.  For example, Dr. Hix is informed and believes the following accusations were made:







It is apparent Banfield was looking for a reason to terminate a whistleblower. But Banfield was also trying to save money. Dr. Hix was on track to receive a substantial bonus. Banfield did not pay Dr. Hix her bonus presumably having declared a forfeiture based on her employment ending before the end of the calendar year. Had Banfield followed its own practice of suspension and investigation, Dr. Hix would have been employed and on her leave of absence through the end of the year. Banfield expedited, and retroactively dated, the termination for the sole purpose of unlawfully declaring a forfeiture of Dr. Hix's bonus.

Dr. Hix is a leader with an impeccable record. She had no history of disciplinary action, was decorated with awards, and was a top performer. When Dr. Hix began raising concerns about Banfield's unethical and unlawful actions during the pandemic, her line manager first ignored her, then threatened disciplinary action, and when that failed, she made up a reason to terminate her. This was not a lawful termination, but retaliation against a whistle blower on a protected leave of absence.



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency GAVIN NEWSOM, GOVERNOR

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**

KEVIN KISH, DIRECTOR

2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
(800) 884-1684 (Voice) I (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov I Email: contact.center@dfeh.ca.gov

June 27, 2022

Elizabeth Hix
[redacted]

RE: **Notice of Case Closure and Right to Sue**
DFEH Matter Number: 202206-17373422
Right to Sue: Hix / Medical Management International, Inc. d/b/a Banfield Pet Hospital

Dear Elizabeth Hix:

This letter informs you that the above-referenced complaint filed with the Department of Fair Employment and Housing (DFEH) has been closed effective June 27, 2022 because an immediate Right to Sue notice was requested.

This letter is also your Right to Sue notice. According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

This matter may qualify for DFEH's Small Employer Family Leave Mediation Pilot Program. Under this program, established under Government Code section 12945.21, a small employer with 5 -19 employees, charged with violation of the California Family Rights Act, Government Code section 12945.2, has the right to participate in DFEH's free mediation program. Under this program both the employee requesting an immediate right to sue and the employer charged with the violation may request that all parties participate in DFEH's free mediation program. The employee is required to contact the Department's Dispute Resolution Division prior to filing a civil action and must also indicate whether they are requesting mediation. The employee is prohibited from filing a civil action unless the Department does not initiate mediation within the time period specified in section 12945.21, subdivision (b) (4), or until the mediation is complete or is unsuccessful. The employee's statute of limitations to file a civil action, including for all related claims not arising under section 12945.2, is tolled from the date the employee contacts the Department regarding the intent to pursue legal action until the mediation is complete or is unsuccessful. Contact DFEH's Small Employer Family Leave Mediation Pilot Program by emailing DRDOnlinerequests@dfeh.ca.gov and include the DFEH matter number indicated on the Right to Sue notice.

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency          GAVIN NEWSOM, GOVERNOR

# DEPARTMENT OF FAIR EMPLOYMENT & HOUSING
KEVIN KISH, DIRECTOR

2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
(800) 884-1684 (Voice) I (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov I Email: contact.center@dfeh.ca.gov

To obtain a federal Right to Sue notice, you must contact the U.S. Equal Employment
Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of this
DFEH Notice of Case Closure or within 300 days of the alleged discriminatory act,
whichever is earlier.

Sincerely,


Department of Fair Employment and Housing

Form DFEH-ENF 80 RS (Revised 02/22)